IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 23, 2025 Session

## STATE OF TENNESSEE v. JAMES ROBERT HOWELL

**Appeal from the Criminal Court for Knox County**
**No. 121034   Steven Wayne Sword, Judge**
_____

**No. E2024-00961-CCA-R3-CD**
_____

A Knox County jury convicted the defendant, James Robert Howell, of four counts of sexual battery by an authority figure and one count of assault by offensive or provocative touching, for which he received an effective sentence of four years and six months in confinement.  On appeal, the defendant contends the evidence presented at trial was insufficient to support his convictions.  The defendant also contends that the trial court erred in admitting hearsay evidence, in admitting evidence of prior abuse, and in imposing an excessive sentence.  Additionally, the defendant claims improper argument by the State affected the verdict.  After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JILL BARTEE AYERS, and MATTHEW J. WILSON, JJ., joined.

Gregory P. Isaacs and Michael R. Fitzgerald (on appeal) and Keith Lieberman (at trial), Knoxville, Tennessee, for the appellant, James Robert Howell.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Charme Allen, District Attorney General; and Jordan Murray, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On March 24, 2022, a Knox County Grand Jury indicted the defendant for one count of attempted rape (count one) and seven counts of sexual battery by an authority figure (counts two, three, four, five, six, seven, and eight). The defendant was charged with abusing S.C., the great-niece of the defendant's wife, as well as J.R., S.C.'s friend.[1] S.C. and J.R. were fourteen years old at the time of the incident and sixteen years old at the time of trial.

The allegations against the defendant arose on August 5, 2021. S.C. had lived with her maternal great-aunt, Lora Howell, since she was approximately eighteen months old, and the defendant moved in with them after marrying Ms. Howell when S.C. was six years old. Upon moving in with Ms. Howell and S.C., the defendant had a position of authority over S.C. and was permitted to discipline her. On the evening of August 5, 2021, S.C.'s friend, J.R., was spending the night, and the girls decided to play a prank on the defendant. They approached the defendant, who was drinking whisky in the backyard, and informed him that there was a boy in the house. The defendant stood up and yelled at the girls to "[g]et into the house." The girls went into S.C.'s bedroom and got ready for bed. However, the defendant began texting S.C., and the following text exchange occurred:

| | |
|---|---|
| The Defendant: | I hear you |
| S.C.: | Yes ik |
| S.C.: | But everything I was saying was just a prank me and [J.R.] been planning it for awhile but I'm sorry if I got u all mad and I would get mad as well if my kid did that but I would never bring a boy in our house I'm being serious if u don't believe me or [J.R.] then ok don't believe us but I would never do that |
| The Defendant: | B******t |
| S.C.: | It's not b******t just whatever if u don't believe me than find u don't have to but I didn't sneak a guy in the house I would never |
| S.C.: | *Fine |
| The Defendant: | Whatever. I'm coming in there. Why would you do that? |

---

[1] It is the policy of this Court to refer to victims of sexual abuse by their initials.

S.C.: Do what?

The Defendant: Lie?

S.C.: And sure go ahead u can come in I don't know why u would want to I thought u said u didn't wanna have anything to do with me

The defendant then entered S.C.'s bedroom and lay down on her bed between S.C. and J.R. S.C. tried to go to sleep; however, she could feel "weird movements" and realized the defendant was taking his pajama pants off next to her. The defendant rubbed his penis against S.C.'s clothed buttocks and took S.C.'s hand and placed it on his penis, which felt "warm" and "really hard." The defendant also reached inside S.C.'s shorts and touched her vagina with his fingers, but S.C. grabbed the defendant's hand and moved it away. The defendant then touched J.R.'s thigh and buttocks on top of her pajama shorts. J.R. immediately kicked the window near the bed to get S.C.'s attention, and S.C. jumped up, turned the lights on, and saw the defendant on the bed with his pants down to his ankles.

J.R. ran into the living room, and S.C. followed her, asking what happened. J.R., who looked scared and was shaking, told S.C. that the defendant "touched her down there." When the defendant entered the living room, S.C. went up to him and said, "You touched [J.R.]." The defendant denied touching J.R., so S.C. pushed him and yelled, "You touched her." S.C. and J.R. ran back to S.C.'s bedroom, and S.C. locked the door and placed a heavy dresser and recliner in front of the door to prevent the defendant from entering the room. S.C. then sent the following text to Ms. Howell, who was asleep in her bedroom at the time the incident occurred:

Hey so me and [J.R.] was in the bedroom until [the defendant] came in because he was so mad because me and [J.R.] pranked him and so he laid in my bed telling us to go to bed and so then he was getting his hand and putting it down my pants and then he touched [J.R.] and she's shaking and she's crying and I was so mad to wear I threatened [the defendant] and we are both scared and both shaking

However, Ms. Howell did not immediately awaken, and S.C. received the following text messages from the defendant:

The Defendant: Come here now!!

S.C.: What do u want?

- 3 -

| The Defendant: | Let her sleep and come here now |
|---|---|
| S.C.: | No because ur making her shake and cry and I don't trust you anymore |
| The Defendant: | You are lying and you are causing the problem |
| S.C.: | No I'm not lying she is right besides me when she went into my bedroom she was crying she is literally shaking why in the world would I lie about this u was touching me and ik so don't lie |
| The Defendant: | I will send her home and she won't come back. You're not going to be able to be her friend |
| The Defendant: | I am not taking anybody shopping. Oh my God. She is 14 years old!!!!! I am 53. You all need to understand how much I am trying to be a good dad. I give up |

Ms. Howell eventually woke up and saw S.C.'s text message. After speaking with S.C. and J.R., Ms. Howell confronted the defendant, who denied the allegations. However, Ms. Howell told the defendant that he needed to leave the residence for the night. Although Ms. Howell did not immediately call the police, she did inform J.R.'s guardian when he picked her up the next morning.

Officer Carson Kiser with the Knox County Sheriff's Office responded to a child abuse call at J.R.'s residence on August 6, 2021. After speaking with Michael Adams, J.R.'s custodial grandfather, Officer Kiser contacted Family Crimes Detective Jeff Bryant to continue the investigation. Detective Bryant spoke to Mr. Adams and Ms. Howell before contacting the defendant, who came to the Family Justice Center for a recorded interview, which was played for the jury. Detective Bryant also received consent from Ms. Howell to perform a "phone dump" of S.C.'s phone to retrieve text messages, phone calls, and pictures stored inside the phone.

The defendant elected not to offer any proof and moved for a judgment of acquittal, which was granted, in part, dismissing counts one, four, and five of the indictment. The State then made the following election of offenses:

As to counts 2 and 3: when the defendant touched the primary genital area of [S.C.] with his hand under her shorts, skin to skin.

As to counts 6 and 7: when the defendant placed [S.C.'s] hand on his penis.

As to count 8: when the defendant touched the buttocks of [J.R.].

The defendant was subsequently found guilty of four counts of sexual battery by an authority figure (counts two, three, six, and seven) and one count of the lesser-included offense of assault by offensive or provocative touching (count eight).

During the sentencing hearing, the State introduced a copy of the defendant's presentence report and psychosexual risk assessment. According to S.C., the defendant had sexually touched her on numerous occasions prior to the incident on August 5, 2021. She stated that the defendant would try to pull her onto the couch when she walked past him and that he would place his hands underneath her clothes "on [her] breasts or on [her] butt." The defendant would also try to touch her inappropriately when he gave her a goodnight hug. According to S.C., the defendant entered S.C.'s bedroom while Ms. Howell slept and climbed into her bed. The defendant lay behind S.C. and touched her vagina with his hand. This occurred "a couple days a week" when she was eleven or twelve years old. S.C. did not tell Ms. Howell about the defendant's behavior because she was afraid that she would be taken away from Ms. Howell or that Ms. Howell would get in trouble.

S.C. also provided a victim impact statement, telling the trial court she was "scared every single night" and had "trouble sleeping all the time." She noted that she often woke up during the night to check the lock on her bedroom door.

A.F., S.C.'s cousin, testified that she was thirteen years old and in the eighth grade. In 2020, A.F. was sleeping at S.C.'s house when she awoke to someone touching her buttocks and rubbing her thigh. A.F. initially believed S.C. was rubbing her leg until she saw that S.C. was lying in front of her. She immediately woke S.C. up, and they realized that the defendant was in bed with them. They "confronted [the defendant] and sent him out of the room." Later, when they attempted to speak to the defendant, he denied touching A.F.

Holly Werner, the defendant's ex-wife, was previously married to the defendant for sixteen years and had known him for thirty years. She stated that he was a kind person, a man of good character, and a good father to their son. Ms. Werner testified she could not "fathom that [the defendant] would ever do this to anybody, much less a child."

Dylan Howell, the defendant's son, testified that the defendant was a gentle and kind father who would never hurt anyone. Mr. Howell kept in contact with the defendant

following his parents' divorce and saw the defendant when they had time. He testified that he and the defendant had many family gatherings with children present, and "[t]here was never anything out of line that ever happened."

The defendant also provided a statement of allocution, denying he ever "had any criminal thoughts." He admitted to going into S.C.'s bedroom but stated that he simply made a poor "decision on disciplinary action."

In sentencing the defendant, the trial court considered the evidence presented during the trial and sentencing hearing, including the presentence report and arguments of counsel. In reviewing the applicable enhancement factors, the trial court found enhancement factor (1), the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, applicable to the defendant's case. *See* Tenn. Code Ann. § 40-35-114(1). In mitigation, the trial court took into consideration the defendant's "fairly clean history" and testimony from the defendant's family members. After applying and weighing the applicable enhancement and mitigating factors and considering the facts and circumstances of the case, the trial court imposed sentences of four years at 100% for counts two, three, six, and seven and six months at 75% for count eight. The trial court merged counts three, six, and seven into count two and ordered counts two and eight to be served consecutively, resulting in an effective sentence of four years and six months.

In denying probation, the trial court articulated its reasoning, as follows:

So the first issue the [c]ourt has to determine, should the defendant receive probation or a sentence of confinement? He's been in jail for 182 days now, his current jail time. He, as I said, really doesn't have a long criminal history, so confinement isn't warranted for that.

Is it a[n] effective deterrence to others for similar crimes? There was some, I think, media publicity on these types of cases for a while. I haven't really seen anything about this case. I'm not sure that anybody out there's paying a whole lot of attention to this, although the Legislature's paying attention, 'cause they keep increasing the punishment for these offenses. So the Legislature thinks that confinement now is an effective deterrence, 'cause that's where – that's where they've been heading on all these offenses in the last decade.

Have measures less restrictive frequently or recently been tried unsuccessfully? That – he hasn't had any rehabilitative efforts, because he hasn't been on probation.

What's his potential or lack of potential for rehabilitation or treatment? That goes to both the length of the sentence, as well as the manner in which it should be served.

Dr. Adler's report is helpful on that. It's always interesting when a defendant maintains their innocence after being convicted. I have no problem with that. I don't hold that against [the defendant]. But when it comes time to look at treatment as a sex offender, it does have a big impact. And if you look at a lot of Dr. Adler's report, that's one of the big concerns that he has – he says. Sex offender treatment is considered very poor. This is based on the complete denial of the sexual offense allegations. If he's being truthful and did not engage in the sexual offense he's been charged with, he also would not be a treatment candidate. And so I see the position Dr. Adler's in.

And so when I look at that, I – you know, I think Dr. Adler mostly says he's a low to moderate risk to reoffend. You know, when I look at that, I think, well, you know, I understand his denial of it, the jury disagreed with that, and the – sex offender treatment is not going to help him, 'cause if you don't admit that there's an issue, then there's nothing they can do to help. And so that actually weighs against the defendant. Even though I don't hold it against him that he's maintaining his innocence, when it comes to consider whether or not he's amenable to treatment, I can't find that he is.

And finally, is confinement necessary to avoid depreciating the seriousness of the offenses? I do think that that is true in this particular case. These girls were very young. They were two of them in the bed at the same time. Now, we've heard from a third person, which I'll address that in just a moment. But I do think that confinement is warranted in this case. I also don't believe that split confinement is sufficient, considering the age of the children. And so I do think this is a sentence to serve.

The defendant filed a motion for new trial which the trial court denied. This appeal followed.

## *Analysis*

On appeal, the defendant argues the evidence presented at trial was insufficient to support his convictions. The defendant also contends the trial court erred in admitting

hearsay evidence, in admitting evidence of prior abuse, and in imposing an excessive sentence. Additionally, the defendant claims improper argument by the State affected the verdict. The State contends the evidence is sufficient, the trial court properly allowed the hearsay evidence, and the trial court properly sentenced the defendant. The State also contends the defendant is not entitled to plain error relief of the State's closing argument or evidence of prior abuse.

## I.    Excited Utterance[2]

The defendant contends J.R.'s statements, made on the night of the incident and admitted through S.C.'s testimony, were inadmissible hearsay and should not have been admitted pursuant to the excited utterance exception to the exclusionary rule. The defendant argues that there was no specific evidence presented that J.R. was under stress when she made the statement to S.C. and that the statement was made in response to questioning from S.C. The State contends the trial court properly allowed the statement under the excited utterance exception.

The Tennessee Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Generally, hearsay is inadmissible, but there are numerous exceptions to this rule, including an exception for a statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition. Tenn. R. Evid. 802, 803(2). A trial court's findings of fact and credibility determinations regarding hearsay are binding on this Court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). However, determinations regarding whether a statement is hearsay and whether a hearsay exception applies are questions of law and subject to de novo review. *Id*.

"Underlying the excited utterance exception is the theory that 'circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces the utterances free of conscious fabrication.'" *State v. Franklin*, 308 S.W.3d 799, 823 (Tenn. 2010) (quoting *State v. Land*, 34 S.W.3d 516, 528 Tenn. Crim. App. 2000)). Three requirements must be met for a statement to qualify as an excited utterance:

> The first requirement is a startling event or condition that suspends the normal, reflective thought processes of the declarant. Second, the statement must relate to the startling event or condition. This broad requirement offers

---

[2] For the sake of clarity, we have reordered and renumbered the issues from the order they appeared in the defendant's brief.

considerable leeway such that the statement may describe all or part of the event or condition, or deal with the effect or impact of that event or condition. The third and final requirement dictates that the declarant make the statement while under the stress or excitement from the event or condition. This requirement considers a variety of factors, including the interval of time between the starling event and the statement.

*Id.* (footnotes, citations, and internal quotation marks omitted). The "ultimate test" of whether a statement is admissible within the excited utterance exception is "spontaneity and logical relation to the main event and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement or strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication." *Franklin*, 308 S.W.3d at 823 (quoting *State v. Smith*, 857 S.W.2d 1, 9 (Tenn. 1993)).

During S.C.'s direct examination, the following exchange occurred:

| The State: | Tell me what happens when you go to the living room. |
|---|---|
| S.C.: | I go to the living room and ask [J.R.] what happened. And she told me that [the defendant] touched her. |
| The State: | Okay. Did she say where? |
| S.C. | Yeah. She said he touched her down there. |
| Defense Counsel: | Your, Honor, I'm going to object. That's hearsay. |
| Trial Court: | Yeah. So at this point – |
| The State: | I can – I can lay a foundation for it. |
| Trial Court: | I don't know how you lay a foundation for hearsay. |
| The State: | Excited utterance. |
| Trial Court: | Okay. |
| The State: | When you go out into – let me back up a little bit before we get into what [J.R.'s] saying. Okay, [S.C.]? |

. . .

|  | Can you describe how [J.R.] is acting at that point? |
| --- | --- |
| S.C.: | She still looks scared.  She's, like, giving me that scared look and she's, like, shaking, like, so much. |
| The State: | Okay.  Is she crying at all? |
| S.C.: | Not at that point. |
| The State: | Okay.  When she does talk to you, is she excited?  Is she – |
| S.C.: | She's, like, mumbling. |
| The State: | Okay.  Your Honor, I think that would be – |
| Trial Court: | Yeah.  I'm going to overrule the objection now on hearsay, for excited utterance.  You may say what [J.R.] said. |

Although the defendant argues J.R.'s statement "was not made while she 'was under the stress or excitement caused by the startling event or condition,'" S.C. testified that J.R., who was fourteen years old at the time, ran into the living room immediately after the fifty-three-year-old defendant inappropriately touched her in S.C.'s bed.  J.R. was "shaking . . . so much" and had a scared look as she told S.C. that the defendant "touched her down there."  J.R. was clearly still laboring under the excitement of the incident and made her statement at a time so near it as to preclude "the idea of deliberation and fabrication." *Kendrick*, 454 S.W.3d at 478 (quoting *State v. Gordon*, 952 S.W.2d 817, 820 (Tenn. 1997)).  We, therefore, conclude the trial court properly found J.R.'s statement was admissible as an excited utterance, and the defendant is not entitled to relief on this issue.

## II.     Rule 412 Evidence – Plain Error

The defendant argues the trial court erred in allowing Ms. Howell to testify regarding prior sexual abuse of S.C.  The defendant contends this testimony was "presumably irrelevant and highly prejudicial" pursuant to Rule 412.  The defendant acknowledges that he did not contemporaneously object to the testimony but requests plain error relief.  The State contends the defendant is not entitled to plain error relief.

Tennessee Rule of Evidence 401 provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence is typically admissible, while irrelevant evidence is inadmissible. Tenn. R. Evid. 402. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. The admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with that discretion absent a clear showing of abuse of discretion. *See State v. Clayton*, 535 S.W.3d 829, 859 (Tenn. 2017). This Court finds an abuse of discretion when the trial court applies "an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining.'" *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (quoting *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

Under Rule 412, "[e]vidence of specific instances of a victim's sexual behavior is inadmissible unless" it is "[r]equired by the Tennessee or United States Constitution, or" the defendant offers the evidence "on the issue of credibility of the victim, provided the prosecutor or victim has presented evidence as to the victim's sexual behavior, and only to the extent needed to rebut the specific evidence presented by the prosecutor or victim." Tenn. R. Evid. 412(c)(1)-(2).

Before an error may be recognized, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). In *State v. Smith*, our supreme court adopted *Adkisson*'s five-factor test for determining whether an error should be recognized as plain:

(a) The record must clearly establish what occurred in the trial court;

(b) A clear and unequivocal rule of law must have been breached;

(c) A substantial right of the accused must have been adversely affected;

(d) The accused did not waive the issue for tactical reasons; and

(e) Consideration of the error is "necessary to do substantial justice."

- 11 -

24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283.

During Ms. Howell's direct examination, the following exchange occurred:

The State: Do you remember when you got custody of [S.C.]?

Ms. Howell: She was about 14 or 18 months old.

The State: When she came into your custody, was there a time where she still had – or excuse me. Let me rephrase that. When she came into your custody, was there a period of time where her biological father still had visitation with her?

Ms. Howell: Yes.

The State: Was that eventually ceased?

Ms. Howell: Yes.

The State: Why is that, to your knowledge?

Ms. Howell: For sexual things.

The State: Okay. Being done to [S.C.]?

Ms. Howell: [S.C.].

The State: And so at that—once that was discovered, was visitation stopped with her biological father?

Ms. Howell: Yes. He has no contact with me or her.

The State: Do you remember the, rough, time period that was when visitation was stopped and that came to light?

Ms. Howell: She was three or four.

Here, the defendant has failed to show that a clear and unequivocal rule of law was breached. *Smith*, 24 S.W.3d at 282-83. At the motion for new trial hearing, the State noted the testimony was "very limited" and introduced to explain to the jury "how [S.C.] came into, sort of, the custody of her great aunt Lora Howell." Additionally, although the defendant argues evidence of S.C.'s prior sexual abuse was "presumably irrelevant and highly prejudicial" as "reflected by the stringent standards prescribed by Rule 412," Rule 412 does not preclude the State from introducing evidence of a victim's past sexual behavior. Accordingly, we conclude the defendant is not entitled to plain error relief on this issue.

## III.    Sufficiency

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Sexual Battery by an Authority Figure (counts two, three, six, seven)

The defendant was convicted of four counts of sexual battery by an authority figure. As charged in this case, sexual battery by an authority figure "is unlawful sexual contact with a victim by the defendant or the defendant by a victim" where "[t]he victim was, at the time of the offense, thirteen (13) years of age or older but less then eighteen (18) years of age," and "[t]he defendant had, at the time of the offense, parental or custodial authority over the victim and used the authority to accomplish the sexual contact." Tenn. Code Ann. § 39-13-527(a)(1), (3)(B). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification . . . ." *Id.* § 39-13-501(6). "'Intimate parts' includes the primary genital area . . . of a human being . . . ." *Id.* § 39-13-501(2).

In the light most favorable to the State, the evidence established that the defendant moved into S.C.'s home when she was six years old and had authority to discipline her. On August 5, 2021, the defendant entered S.C.'s bedroom and lay in her bed between S.C. and J.R. The defendant took off his pants and began rubbing his penis against S.C.'s clothed buttocks. He then grabbed S.C.'s hand and placed it on his penis, which she described as "warm" and "really hard." The defendant also reached into S.C.'s shorts and attempted to touch her vagina with his hand. Based on this evidence, a rational jury could find sexual battery by an authority figure beyond a reasonable doubt.

## B. Assault by Offensive or Provocative Touching (count eight)

The defendant was also charged with one count of assault by offensive or provocative touching. Assault, as instructed to the jury, occurs when a person "[i]ntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann. § 39-13-101(a)(3).

In the light most favorable to the State, after S.C. pushed the defendant's hand away, the defendant turned to fourteen-year-old J.R. and touched her thigh and clothed buttocks. J.R. kicked the window to get S.C.'s attention, and S.C. immediately jumped up and turned the lights on. J.R. then ran into the living room, where she told S.C. that the defendant "touched her down there." Based on this evidence, a rational jury could find assault by offensive or provocative touching beyond a reasonable doubt. Although the defendant contends S.C. and J.R.'s testimonies were inconsistent, issues of witness credibility, resolving conflicts in testimony, and the weight to be afforded to the evidence are the exclusive province of the trier of fact, and we will not disturb those determinations on

- 14 -

appeal. *Bland*, 958 S.W.2d at 659. Accordingly, the defendant is not entitled to relief on this issue.

## IV.     Improper Argument – Plain Error

The defendant argues the trial court erred in admitting Rule 404(b) evidence. Specifically, he argues the trial court erred in admitting evidence during the State's closing argument that the defendant "groomed" S.C. prior to the incident in this case. The defendant acknowledges that he did not contemporaneously object to the prosecutor's statements and requests plain error review. The State contends that, because the statement was made during closing argument and, therefore, was not evidence, the proper inquiry is whether the prosecutor committed prosecutorial misconduct. The State further contends the defendant is not entitled to plain error relief. We agree with the State.

Before an error may be recognized, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). In *State v. Smith*, our supreme court adopted *Adkisson*'s five-factor test for determining whether an error should be recognized as plain:

(a) The record must clearly establish what occurred in the trial court;

(b) A clear and unequivocal rule of law must have been breached;

(c) A substantial right of the accused must have been adversely affected;

(d) The accused did not waive the issue for tactical reasons; and

(e) Consideration of the error is "necessary to do substantial justice."

24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283.

This Court has recognized five general categories of prosecutorial misconduct: (1) intentionally misstating the evidence or misleading the jury as to the inferences it may draw; (2) expressing personal beliefs or opinions as to the truth or falsity of any testimony or evidence or the guilt of the defendant; (3) inflaming or attempting to inflame the passions or prejudices of the jury; (4) injecting issues broader than the guilt or innocence of the

- 15 -

defendant; or (5) arguing or referring to facts outside the record that are not matters of common knowledge. *See State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003).

The established test for determining whether prosecutorial error based on improper comments amounts to reversible error is whether the conduct was so improper, or the argument so inflammatory, that it affected the verdict. *See State v. Reid*, 164 S.W.3d 286, 344 (Tenn. 2005); *Goltz*, 111 S.W.3d at 5. In assessing whether comments made by the prosecution are so inflammatory or improper as to affect the verdict, the court must consider five factors:

> (1) The conduct complained of viewed in the context and the light of the facts and circumstances of the case;
> (2) The curative measures undertaken by the court and the prosecution;
> (3) The intent of the prosecutor in making the improper statements;
> (4) The cumulative effect of the improper alleged conduct and any other errors in the record; and
> (5) The relative strength or weakness of the case.

*Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); *see also Goltz*, 111 S.W.3d at 5-6.

During his closing argument, the prosecutor stated:

She's vulnerable. He picked her.

And I submit, it wasn't just that he picked her. I submit that he groomed her. Because what do you hear in the interview? That man, that 53-year-old man had been getting in her bed with [S.C.] more than just that night. In fact, he insinuates that it's happening multiple times, not just when she was five or six, but recently.

What about the text messages that he was sending her? In the interview, which you'll have to review, you hear detectives – this is at 27:41, around June 21st, so two months before this happens, about. A text from [the defendant] to [S.C.]. Tell her "Good night, baby," "Sleep with me if you want to," "I miss you, Honey," "I'm here, Honey." Ladies and gentlemen, I submit to you that he was grooming her and he was testing the waters that night. I think he had a little bit to drink, he had some whiskey, he was testing the waters and he was trying to push the envelope. He was trying to take it to the next step. Ladies and gentlemen, I submit to you that's what happened.

- 16 -

Contrary to the defendant's claim, we conclude that no clear and unequivocal rule of law was breached. Although the defendant contends the State should have requested a hearing outside of the presence of the jury before discussing evidence of the defendant's "grooming," closing arguments are not evidence, and the trial court properly instructed the jury to follow the law, not the opinions of the attorneys. We presume the jury followed those instructions. *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). Furthermore, the information from the defendant's police interview discussed by the State during the pertinent portion of its closing argument was previously admitted into evidence during Detective Bryant's testimony without objection. Accordingly, we conclude the defendant is not entitled to plain error relief on this issue.

## V.      Sentencing

The defendant challenges the trial court's decisions regarding the length and manner of service of his sentence. He asserts the trial court erred in sentencing him as a Range I offender, in sentencing him above the minimum sentence in his range, in denying probation, and in imposing consecutive sentences. The State contends the trial court properly sentenced the defendant.

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, -210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, the reasons for the sentence; and for a sentence of continuous confinement, the estimated number of years and months the defendant will serve before becoming eligible for release." *Id.* § 40-35-210(e).

When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancement or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Id.* at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing

that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

## A.     Especially Mitigated Offender Classification

The defendant argues the trial court erred in refusing to sentence him as an especially mitigated offender. He asserts that he did not have any prior felony convictions and that the trial court "correctly held that mitigation evidence was present in this matter." The State contends the trial court properly found that the defendant was a standard offender.

When a defendant has no prior felony convictions and the trial court finds mitigating but no enhancement factors, it "may" sentence the defendant as an especially mitigated offender. Tenn. Code Ann. § 40-35-109(a)(1), (2). Sentencing a defendant as an especially mitigated offender allows the court to reduce the Range I minimum sentence by ten percent, to reduce the release eligibility date to twenty percent, or both. *Id.* § 40-35-109(b). The trial court's decision to sentence an offender as an especially mitigated offender is discretionary. *Id.* § 40-35-109; see *State v. Braden*, 867 S.W.2d 750, 762 (Tenn. Crim. App. 1993).

Here, although the defendant did not have any prior felony convictions, the trial court found both applicable mitigating factors and an applicable enhancement factor. Therefore, the defendant did not qualify to be classified as an especially mitigated offender and is not entitled to relief on this issue.

## B.     Length of Sentence

The defendant argues the trial court erred in enhancing his sentence "above the bottom of his applicable range." The defendant contends the trial court was required to start at the minimum sentence, enhance within the range for enhancement factors, and then reduce within the range for mitigating factors. Because the trial court found one enhancement factor and evidence of mitigation, the defendant argues that the minimum sentence was appropriate. The State contends the trial court properly exercised its discretion when it increased the defendant's sentence by one year.

The defendant was convicted of four counts of sexual battery by an authority figure (counts two, three, six, and seven), a Class C felony carrying a sentencing range of three to six years, and assault by offensive or provocative touching (count eight), a Class B misdemeanor carrying a sentencing range of zero days to six months. The trial court applied one enhancement factor and found evidence of mitigation under the catch-all mitigating factor. The trial court then imposed a sentence of four years at 100% for counts

two, three, six, and seven and six months at 75% for count eight. The trial court merged counts three, six, and seven into count two and ordered counts two and eight to be served consecutively, resulting in an effective sentence of four years and six months.

Although the defendant contends the trial court erred in sentencing him above the minimum of his applicable range, a defendant is not entitled to the minimum sentence within the applicable sentencing range. *See Carter*, 254 S.W.3d at 343. Rather, once the trial court determines the sentencing range, it "is free to select any sentence within the applicable range." Tenn. Code Ann. § 40-35-210(a), (d); *Carter*, 254 S.W.3d at 343. Here, our review of the record indicates the trial court imposed a within-range sentence after properly considering the evidence adduced at the sentencing hearing, the presentence report, the principles of sentencing, the parties' arguments, the nature and characteristics of the crime, and evidence of mitigating and enhancement factors. Tenn. Code Ann. §§ 40-35-103(5), -114, -210(b). Therefore, the defendant's sentence is presumed reasonable, and the defendant is not entitled to relief on this issue.

## C.    Probation

The defendant argues the trial court erred in denying probation. Specifically, the defendant contends he did not have a significant prior criminal history and "less restrictive measures than confinement had not been frequently or recently applied unsuccessfully" to the defendant. The State contends the trial court properly imposed a sentence of confinement.

A trial court's decision to grant or deny probation is reviewed under an abuse of discretion standard with a presumption of reasonableness when the sentence reflects the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* Tenn. Code Ann. § 40-35-303(b); *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

Generally, probation is available to a defendant sentenced to ten years or less. Tenn. Code Ann. § 40-35-303(a). A defendant who is convicted as an especially mitigated or standard offender of a Class C, D, or E felony is considered a favorable candidate for

probation.  Tenn. Code Ann. § 40-35-102(6)(A).  In determining whether incarceration is appropriate, the trial court should consider whether:

> (A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C).  Additionally, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed."  *Id.* § 40-35-103(4), (5).

The record reflects that in denying the defendant's request for probation, the trial court considered the purposes and principles of sentencing, the circumstances of the offenses, and the evidence presented at the sentencing hearing.  In determining that confinement was necessary to avoid depreciating the seriousness of the offenses, the trial court emphasized the ages of the minor victims and the fact that there were two victims in the bed at the same time.  Although the trial court was not sure whether this case had received any publicity, it noted that the legislature was "paying attention" because "they keep increasing the punishment for these [types of] offenses."  The trial court relied upon Dr. Adler's report from the defendant's psychosexual risk assessment in finding the defendant was not amenable to treatment, noting that Dr. Adler found the defendant's complete denial of the allegations was associated with a "very poor" treatment outcome.  The trial court also noted that measures less restrictive had never been placed on the defendant.

The record reflects that the trial court weighed the applicable sentencing factors and imposed a sentence of confinement that was consistent with the purposes and principles of sentencing.  Accordingly, we conclude the trial court did not abuse its discretion in ordering the defendant to serve his sentences in confinement, and the defendant is not entitled to relief on this issue.

**D.     Consecutive Sentencing**

The defendant argues the trial court erred in imposing consecutive sentences. Specifically, the defendant argues the victims' inconsistent testimonies "undermine the trial court's reasoning for imposing consecutive sentences." The State contends the trial court properly imposed consecutive sentences.

In *State v. Pollard*, 432 S.W.3d 851 (Tenn. 2013), the Tennessee Supreme Court expanded its holding in *Bise* to also apply to decisions by trial courts regarding consecutive sentencing. *Id.* at 859. This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861. "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Id*. at 862 (citing *State v. Dickson*, 413 S.W.3d 735 (Tenn. 2013)).

Tennessee Code Annotated section 40-35-115(b)(2) authorizes consecutive sentencing for an offender "whose record of criminal activity is extensive." This classification is not self-defining, and the Sentencing Act does not define what constitutes an "extensive" record of criminal activity. In *State v. Perry*, our supreme court provided the following non-exclusive considerations in considering whether a defendant has an extensive record of criminal activity:

(1)     The amount of criminal activity, often the number of convictions, both currently before the trial court for sentencing and prior convictions or activity;
(2)     The time span over which the criminal activity occurred;
(3)     The frequency of criminal activity within that time span;
(4)     The geographic span over which the criminal activity occurred;
(5)     Multiplicity of victims of the criminal activity;
(6)     Any other fact about the defendant or circumstance surrounding the criminal activity or convictions, present or prior, that informs the determination of whether an offender's record of criminal activity was considerable or large in amount, time, space, or scope.

*State v. Perry*, 656 S.W.3d 116, 129-30 (Tenn. 2022).

A defendant need not have prior criminal convictions or activity apart from that for which the defendant is being sentenced to qualify as an offender whose record of criminal activity is extensive. *Id.* at 131. But prior convictions or criminal activity "may demonstrate 'a consistent pattern of operating outside the confines of lawful behavior' and provide some stronger measure of justification for finding that a defendant is an offender whose record of criminal activity is extensive." *Id.* (quoting *Dickson*, 413 S.W.3d at 748).

Here, the trial court noted that, while the defendant has a "clean history," the defendant's convictions in the present case and S.C.'s testimony at the sentencing hearing, which the trial court found credible, could be considered criminal activity. Although S.C. could not tell the trial court the time span over which the prior activity occurred, the trial court found that it was "obviously more than a month or two." At the sentencing hearing, S.C. testified that the defendant touched her "a couple days a week." While most of the activity occurred in one house, S.C. testified that the touching began in their prior home. Finally, the trial court noted that there were two victims, S.C. and J.R. Although A.F. testified at the sentencing hearing, the trial court did not take her testimony into consideration because it was not presented to a grand jury.

Upon consideration of the *Perry* factors, the trial court did not err in determining that the defendant had an extensive criminal history and, therefore, did not abuse its discretion in imposing consecutive sentences based on that determination. The defendant is not entitled to relief on this issue.

### *Conclusion*

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed.


s/ J. ROSS DYER
J. ROSS DYER, JUDGE

- 22 -